Illinois Appellate Court First District Court is now in session. The First Division, the Honorable Justice Michael Hyman presiding, case number 1-7-2-4-8-5. Good afternoon, gentlemen. First, I want to apologize. We've had technical difficulties. Justice Pierce has lost his video. He may be able to join us by audio, we're not sure, or by video as we proceed. In any event, he can listen to the recording. It won't be video, but it'll be a recording as we always do, which will be available within the day. So to begin, I just ask that each of you to identify yourself and then I'll give you the ground rules. Okay, my name is Gilbert Lenz from the DePaul Legal Clinic and I'm here representing Lamar Hardy. Assistant State's Attorney Tyler Cox on behalf of the people of the state of Illinois. All right, thank you. What we would like to proceed is to have you make your arguments as you usually would do in court and we will interrupt you when we have a question. We'll try to do so without speaking first by waving a hand, but if you don't see us, we may then say something and then finish your thought. The idea is that we don't want to speak over you and we want you to finish your thoughts, so it's a little more difficult than when we are in person. I assume you'll each want to, how much time do you want to reserve for rebuttal? Five minutes maximum. Okay, that's fine. And again, I do apologize for the delay. Why don't you proceed? Okay, thank you Justice Hyman. Good afternoon, your honors and counsel. Again, my name is Gilbert Lenz from the DePaul Legal Clinic and I'm here on behalf of Lamar Hardy. Your honors, time permitting, I will touch on the third issue regarding sentencing, but I'd like to focus most of my remarks on the two claims of ineffective assistance of counsel. In this case, your honors, well the first being that counsel was ineffective for not filing a motion to resever the cases and the second being that he was ineffective for failing to file a motion to suppress the suggestive lineup identifications. Why don't you believe he was ineffective for agreeing to join the cases in the first place? Why do I believe he was ineffective for that? No, no, you said you gave two issues. One is for failing to ask to, he initially agreed to join the cases and you didn't mention that as being one of your issues of ineffective assistance of counsel. My question to you is you don't believe that that was ineffective. Is that what you're telling us? I see what you're saying, your honor. I think that's different sides of the you know, the fact of the matter is these cases never should have gone to a joined trial where both, where a single jury heard all of the state's evidence as to both cases. Right, and it's my understanding that he agreed to join. The state didn't even ask for a joinder. There was no motion for a joinder and then all of a sudden there was some agreement or that the, I think specifically what he said is that that we won't object to a joinder where there had not even been a motion for a joinder and so my question to you was that ineffective in and of itself to join these two cases knowing that you'd have one jury hearing these two cases and that of course they're not gonna, it's gonna be very difficult for them to separate the evidence. Yeah, I absolutely agree Justice Walker and I would say that counsel was ineffective from the very beginning. In this case there was three years of counsel was ineffective first for not recognizing from the very beginning that there could be no propensity evidence in this case based on the charging instrument from the state. Well, is that, is that, that's not longer an issue because the state admitted that they were wrong and there was no propensity office evidence offered so that's a non-issue, correct? Correct, but it's telling that counsel from the beginning did not even recognize that fact and it was, it was, it was, he was, it was not until the state on the morning of trial when the state said that there would be no propensity evidence that counsel, well, counsel even then didn't realize that these cases never should be joined based on the difference between the kinds of evidence at issue, the substantive evidence of guilt and the other crimes evidence, so I agree. Stop right there because as I understand it, these incidences occurred within a week apart. Right. And the witnesses because of identification would have been in both trials, right? I mean, that's what, I mean, what difference does that make that if we severed or not? Wouldn't we have had the same trials either way? Absolutely not, Justice Hyman, and, and the reason is because at this trial, at the joint trial, a single jury heard every item of the state's evidence unlimited as to both counts. At severed trials, the trials would have been much different and there's two reasons. Much different, I mean, what, what would have been different? Well, what would have been different is first that the, any evidence from the other charged offense would have come in only for a limited purpose, only for intent or identity, and there are two stages of filtering in that process. Once the state asks to admit this other evidence for other crimes purposes, for the limited purpose of intent or identity, a judge would then have to apply the relevance, but then also prejudice, so a reasonable judge could have, and I think would have, carefully limited the amount of evidence that could come in from the other charged incident at a separate trial. Wasn't there adjudicements to the jury? And that's, and that's the, the second step, Your Honor. That's the other, the other thing that would make it different is that during the severed trials, the jury would receive a limiting instruction, both at the end of evidence, of course, but also at the time when the evidence was introduced, and they'd be told clearly that this is only admissible for the purpose of identity or intent, and our, our legal system, our legislature, our courts have carefully crafted this structure with limitations from the judge and instruction to limit the prejudice of this kind of evidence to it, and its admissibility for its relevant purpose, so I think if you follow the logic of the Walston case, there's no question that these two trials would have been very different had they been severed. Oh, you say there's no question. That is a question, and I'm sure the state is going to say otherwise, so when you say no question, that's not an argument, that's a so I'm trying to figure out what actually would have been different. I mean, how, how is there any prejudice here? Well, the prejudice, again, is that our, our, our system recognizes that when a jury is present, well, again, the judge, the jury at separate trial would not have heard the evidence of the other count in an unlimited fashion as they did here. It would have been limited, as I said, in those two ways, so, and that always happens, isn't it, always happens when you have a joined trial with one jury? I mean, you're, you're making an argument that we should never have joined trials, is that what you're trying to say? No. Okay, so why is this any different? What is it about this case where we have very similar incidences, people, an individual identified in both cases, and, and that would have been brought in in any event because of other issues? What's the difference? Where's the prejudice? Well, I think the, the cases, I think to say that there's no prejudice because evidence would have come in in any event doesn't give significant enough weight to the structure that our legal system is very carefully crafted to, to limit the prejudice of other crimes evidence when it's, when it's introduced only for this limited purpose. And you, I think you're correct about what you're saying right now, but I think the real issue is that there, the, the trial judge found the evidence was overwhelming. The question is, do we agree with the trial judge that the evidence was overwhelming? If the evidence was overwhelming that the crime was committed, how do we then get to the prejudice? Because that has an impact on whether or not the defendant was in fact prejudiced. Yes, your honor. And, and I would, I would not agree that the evidence was overwhelming, but I would say that, that the, the cases we cite, and particularly Walston, Lewis and Johnson, make it clear that the state's evidence has to be extremely strong to overcome the prejudice, prejudicial effect of a, of misjoined cases. The victim, the victim ID'd him. The victim said she looked into his face. There were at least two other people who said they looked into his face and they saw him. They, they know this is the guy. And so three witnesses, this is not based upon one witness who had blurred vision. This was three witnesses and one of them was the victim who actually said, I looked into his face. And I know that was him. Well, I would say, two responses to that, your honor. First, and I'll begin with this topic, I think shortly, which is that, you know, the, the, the other aspect of ineffectiveness on the lineup IDs, but I would point the court to the Lewis case, which I think is very similar factually. You had, it was two murders, so very serious offenses. The main witness for the state in both cases was the defendant's own sister who identified him as having a butcher knife and bloody clothes returning from the first victim's apartment. And in the second murder, a couple days later in a neighboring apartment, she saw her brother stab another person to death. So the state had extremely strong evidence in Lewis and this court said that that, even that was not enough to overcome the prejudicial effect of joining these, those two murders. And I think, I think Lewis is right, right on point on that issue. And I would also say on the Johnson case, where the defendant was charged with domestic battery and gun possession by a felon, the state's evidence in that case, gun possession by a felon, they, they had a prior felony for the defendant and they found a gun in his bedroom. And even where the state's evidence was that strong, the second district, in a unanimous opinion by now Supreme Court Justice Burke, Michael Burke, said that he, that defendant was prejudiced by the joinder of the domestic battery and the gun possession charge, charges in those, in that case. So I think that's not the holding of the court, is it? The court said that in Johnson, that the joinder of the charges, and now I'm, I'm quoting, coupled with the improper jury instructions mandated in new separate trials. The jury instructions were very important in that case. We don't have that jury's instruction issue here. So Johnson doesn't seem to me to be applicable at all. Oh, I, I think it's very applicable actually, your honor, because the, the, the jury instruction error in that case was the fact that... But we don't have a jury instruction error here. So again, they said coupled with, they what that says to me is that alone, the charges alone were not enough. But it's only because what you just said, the jury instructions, because of the problem with the jury instruction, that took it into this different situation than we have here. Uh, I, I think, I think the jury's, okay, I think the jury instruction error in the Johnson case actually makes the case more similar to our case because the error, the reason the jury instruction was improper in Johnson was because that, because it told the jury it could consider the evidence of the other charged offense in an unlimited fashion, not as mere other crimes evidence. And that's exactly what happened in our case. They didn't have a special... Nobody objected. I mean, there's nothing in the record, you did not object to the instructions. That's not in the briefs. So you're, that's not before us, is it? No, we're not saying that, um, counsel is ineffective for not requesting an instruction. What we're saying is that the error is the same as Johnson because in both cases, the jury was told, in our case without an instruction, and in Johnson with an instruction, but in both cases, they were told to consider the evidence of the other case in an unlimited fashion, not as mere other crimes evidence. And that's the error. That's why it was so prejudicial. And that's true in both cases. And I would say, um, your honors, too, that that the joint, the misjoinder in this case does not stand alone because counsel was ineffective for failing to file a motion to suppress the suggestive lineup. And if this court finds that the joinder alone was not sufficiently prejudicial, then the combination of these two errors should require a new point to point the court to this court's recent decision in Clifton, where I would argue an even less suggestive lineup was found to be unduly suggestive and requiring relief. In our case, witnesses essentially all agreed that the suspect was tall and had somewhat of a distinctive hairstyle, certainly had hair, dreads or braids, or braids coming undone. Let me ask you a question, though. Let's assume that the lineup was suppressed. Then how is the evidence of identification much weaker had the lineup identification been suppressed? How is it weaker because it would have been suppressed? Well, there's two reasons for that, your honor. First is that for the, for the witnesses, and this, this would be litigated below on remand at a motion to suppress the lineups, but the witnesses who, who made their, their in-court identifications as based on after making the lineup ID, and that's almost all of them, the suggestive lineup taints that in-court identification under, under Henderson and prior U.S. Supreme Court cases. And the other way is that an in-court identification is, is recognized as universally as being a weaker form of identification than an out-of-court ID. As, as Clarion Graham says, an in-court identification is practically self-impeaching because the defendant is the only one in the courtroom who's obviously on trial. So an in-court identification is significantly weaker than out-of-court identification, and this is part of the answer to your initial question about why these two cases would look different. Not only would the other crimes evidence be strictly limited, and that's a hugely important, but then a proper, proper counsel would have filed a motion to suppress the lineup and, and these lineup IDs would have been suppressed as well, and the state would have been limited to weaker in-court identifications. But there was no issue, and the defecations, in the picture, there, there was, everyone was very, uh, confident and, and clear that they had a good view of the defendant. Everyone said that, and, and they all had no trouble, uh, identifying them and said that, yeah, there were some differences, but when you look at, uh, their testimony together, um, each of them had a very good view. Nobody had a bad view here. Nobody had a bad view, that's true. Uh, I would say, though, that, um, for most of these witnesses, their first identification was at this extremely suggestive lineup. Uh, this, this lineup was far more suggestive than the lineups, than the lineup in Clifton, which this court found to be overly suggestive, requiring relief. That's true. I mean, I'm not sure that's true. In Clifton, uh, the defendant was wearing the clothes from the street, and, uh, was much, and the others weren't. I think it's a very different case. And also, there was a dissent in Clifton, if I recall. So, this isn't a Clifton situation. Uh, here, maybe the skin color of one of the, uh, images may have been different. Is that correct? In this case? Yeah. Yes. I'm sorry, I misheard. In this case. In our case. Yeah. I think, I think the, the complexion, uh, and I didn't, I didn't argue this in the briefs, because I think the complexion issue was a little bit muddy by the fact that some people described the suspect as dark-complected, some said light. I don't think the complexion is an issue, but, but just on the face of the photograph of the lineup, two of the four fillers are self-eliminating. One is so much shorter. The man, um, steaming in to, to Mr. Hardy's left is so much shorter than him that he could not have possibly been the suspect in this case, given the witness descriptions. And then the next man to the left has no hair. Every single witness who saw the suspect, all of it, and they all saw the suspect, said the suspect had hair and distinctive hair. So, this is really, this was a much more, uh, suggestive lineup than Clifton. This was only a two-person lineup at most, and I would argue even the fourth, the third filler did not have a sufficiently similar hairstyle to render him, um, unsuggestive as well. So, really, um, the only person, as this, as this court said in Clifton, the only person in the lineup, it was unduly suggestive because the only person in the lineup who had all of the, the central characteristics described by the witnesses was the defendant, and that's even more true in this case. So, Your Honor, uh, for those two reasons, both the joinder and the failure to file a motion to suppress, uh, the lineup IDs, this court should follow Johnson as to the joinder and Clifton as to the lineup IDs and remand for a new trial. If, if we were going to, uh, instead, uh, look at the sentencing issue, you didn't really, uh, give us any, uh, indication. Um, if you said that, uh, they shouldn't be consecutive, um, but if we say that these are two separate trials, I mean, they're, they're joinder, but they're, they're separate, and, uh, each should be sentenced separately. Um, if we were going to reconsider that the years in light of the fact that the judge had indicated that there was rehabilitation, uh, potential here. Yes. And said that it's never close, close, uh, that he would, the judge would never close out the potential for an individual for rehabilitation. And, um, so if there's capable of rehabilitation in the sentences on the far end, uh, upper scale of the, of the numbers, um, what, what, what do you, would you be saying that he should, uh, be resentenced to? Well, I think our requested relief is, um, it's, there's a few different things the court could do. Um, one, I mean, cutting, finding that the court abused its discretion in running these sentences consecutive would cut the sentence in half. Um, and that would be significant relief, obviously. And I think that would be called for in this case, obviously also the court either in addition to, or in the, in terms that were, were imposed in each case, uh, by some amount that the court deems reasonable. Um, and obviously of course the court could remand for resentencing with instructions as to the, the proper, uh, factors to consider. So, uh, traditionally those are the three certain, in a case like this, those are the three options before the court. And I would say that's called for in this case because while, while I agree that the, the judge here found that Hardy was not a bad person and did not give up on him on some level, I think the judge abused his discretion when he then said that Mr. Hardy, whose conduct is so obviously the result of long-term untreated mental health problems, uh, his conduct was the result of quote bad choices. Um, it, you know, we don't, we don't need to be psychiatrists to know that, that people with serious mental health problems like Mr. Hardy are not fully, fully capable of making choices on their own. And for the judge to say that this conduct was because of bad choices and then give him such a long sentence, um, I think it's clear the judge didn't give the mental health problems here sufficient consideration. Um, so if I answered your question about the requested relief, I would, um, close just by saying that this court should remand for new separate trials pursuant to the first two arguments, either one or both, or, um, All right. Thank you. Thank you. A police court assistant state's attorney Tyler Cox on behalf of the people of the state of Illinois, asking this court to affirm the defendant's convictions for attempt to aggravate a criminal sexual assault and affirm his sentence for the same, where the defendant has not shown that his counsel is ineffective and he has not shown that his sentence was an abuse of discretion. First, regarding the ineffective assistance, defendant has not shown that he was deprived of the effective assistance of counsel by his counsel's decision not to attempt to re-sever the case, as well as not to file a futile motion to suppress identification. Regarding re-severing the cases, defendant has not shown that he suffered any prejudice as a result of counsel's decision not to attempt to re-sever the cases. As your honor mentioned, the trial court, while it was not the trier of fact in this case, it did remark that the this evidence included not only the word of the victim, but the word of two independent witnesses on both cases, both the July 31st and August 8th cases. So this was not the an incident of one person's word against another, it was three person's word against the defendant's word in this case. But isn't it true that some of the evidence that came in as a result of this probably would not have come in had they been severed with regard to the extent to which the other crimes evidence would not have been so thoroughly considered? That is possible. It's likely, Judge. However, as counsel mentioned, there's a possibility the court could find that more evidence than just a single witness would come in on the other case if the cases were re-severed. If we don't know for sure, why wouldn't that indicate prejudice? Simply because of the overwhelming evidence on both cases in this particular incident, Judge. There was no effort on the part of the state to intermingle the witnesses. They did not go back and forth between the two cases. They laid out the case on one case, all the witnesses, and then another case. They never argued for propensity in this case. But the problem here is that the jury considered the evidence in an unlimited fashion. Evidence that would have that came in on one case should not have come in on the other case. There was no admonishments. There's your prejudice. So how do you get around that as being prejudice? Because I don't think that shows that there's a reasonable probability of a different result in this case based on the sheer amount of evidence on each specific case, on the July 31st case as well as the August 8th case. There was multiple witnesses for each case. But there was nothing to prevent the jury from using all the information totally against them in each case rather than applying the evidence properly as to identity and intent. And that would have been the limited purpose upon which the evidence would have been used by the jury if each trial had been done separately. In this case, the jury just had no, they weren't even admonished not to consider the evidence any other way. And there's your prejudice. Yes, as you said, there is no nothing stopping the jury from considering the evidence of one case as evidence of guilt in the other case. However, even with an instruction, there's no guarantee the jury wouldn't have done the same, even in a severed case. Even the defense attorneys in this case treated the cases as separately. And there were... When I explained that my dog was about to attack, I said nothing. And had I told him not to attack, it wouldn't have made a difference. Well, I don't know. Probably if the owner had told the dog to sit and not attack, maybe he would not have attacked. And this is the case that we have here, is that nothing was said to the jury in terms of using the evidence properly. Nothing was said. That is correct. Which would you prefer, to have the owner say nothing or tell the dog to back down? I understand what you're saying. That's exactly what we have here. And there is a problem. Yes, I... It's my view in the... It's our position that in just in light of the overwhelming evidence in this case, that there was no prejudice as a result of counsel's decision not to attempt to re-sever the cases. Well, it was probably a mistake to agree to sever in the first place. I'm sorry, to agree to join the cases in the first place. Because there was not even a motion from the state to join the case. There was just some dialogue with the judge. And then all of a sudden, defense counsel says, Judge, we would have no objection to a joinder. And then once the defense counsel realized the limited purpose upon which the evidence would come in, the defense counsel never filed a motion to sever the cases. That is true, Your Honor. And obviously, we don't have a full... All we have are the comments. Whether or not that was irrational and unreasonable. And most lawyers would probably tell you that it was. It was probably even more than that. Without being insulting to the attorney that tried the case, it was probably more than irrational and unreasonable. Yes, Judge, that is obviously a part of the inquiry in this particular instance was the both objectively unreasonable and prejudice. However, the only answer we have as to counsel's decision is those few words made on the record there. However, he also indicated that he spoke with his client prior to agreeing or not objecting to joining the cases. So I don't believe it's his court's position to interfere with... In the Johnson case. In Johnson, the appellate court said that counsel agreed to the joinder as a matter of convenience. And it had nothing to do with trial strategy. And it seems like that that's what happened here is that counsel just thought, I can get both of these cases off my docket. Let's go ahead and join them. And I'll be done with both of them with one bang. And that's not the way constitutional rights should be treated. Absolutely. And the only insight we have is counsel's comment after the trial at sentencing. What I saw when I was practicing is when I worked as a trial court judge, I would see state's attorneys sometimes that would speak up and say, well, no judge, I don't think counsel should be agreeing to that because we haven't even filed a motion and we don't want anything to affect this trial later on. We want to make sure this trial is near perfect. And I say near perfect because I understand there's no such thing as a perfect trial. But I've seen good state's attorneys do that. I've seen them say, judge, no, I don't think counsel should be agreeing to that. I think we need to... We don't want anything to affect this down the road. That's what a good... And I'm not accusing anyone because I'm sure you weren't the state's attorney on the case. I was not a judge. Yeah, but that's how you avoid that. And that's what the good state's attorneys do. I saw it all the time as a trial judge. Absolutely. But I also think that it's not the state's attorney's position when a defense counsel has indicated he spoke with his client and they have decided to proceed this way. I don't believe it's the state's attorney's position to interfere with that particular relationship or that decision between the attorney and... Well, at least say, judge, we haven't even filed a motion yet. There's no motion pending before you regarding the jointer. There was no motion. And I think even today there's been no motion. There was never a motion filed as we sit here now. Yeah, so as far as I'm aware, there was never a motion. It was just that discussion between the parties, obviously. Or even a request, let alone a motion. An oral request was never even made. This was counsel who just decided to not object to something that had not even been asked yet. From the record, that's what it appears like. Yes, judge. Yeah. There's a problem there. But there was an order entered to join the cases. Correct. Even without a motion, I mean, which happens. Correct. Is there any requirement that it has to have a motion? Not that I know of, judge, off the top of my head. No, there needs to be a request. Generally, the judge is not going to do that on his own. Usually the state brings the jointer statute into play. And they didn't do it this time. I'm talking about generally the way it happens. Yes, judge. As far as the ineffective assistance regarding the resevering the cases, it's our position that there was simply no prejudice shown in this case. And therefore, it cannot be ineffective assistance of counsel for not attempting to resever the cases. Turning to the motion to suppress identification, a defendant has not shown that his counsel's decision not to file a motion to suppress identification was objectively unreasonable, or that any prejudice resulted as a result of that decision. Such a motion would have been futile in this case, simply because of the fact that it was not unduly suggested this live lineup that defendant points to. Well, what about the fact that one of the three other individuals was much shorter? One was bald. That leaves you with two. And the third, his hair was different. So the argument is none of these people have any similarity with Hardy. So then Hardy stook out when he put the three of them with him. Yes, judge. And as multiple courts and your honor has pointed out, they don't have to be identical in order to... Participants in a lineup don't have to be identical in order to not be impermissibly suggestive. There's allowance for certain variances. One guy is clearly about eight inches shorter. Yes, judge, however that... He shouldn't have even been in the lineup. However, the descriptions of the witnesses, they varied from about, I think one individual said the defendant was about six foot three. Another described him as being as short as five foot 10. So it was not a clear cut of the height based on the witness's descriptions in this case. So there was room for variance in that. In addition, the defendant was not the one who was the shortest. He was not the obvious odd man out in that situation. As in people versus Clifton. Where they all look like they're odd man out by my standard. Excuse me, judge, I didn't hear that. We all appear to be the odd man out. None of them, there's no resemblance whatsoever. Judge, they aren't, they are... Literally zero. They all have similar complexions, hair colors, facial hair. They're all black. There's no resemblance whatsoever. Not even, not skin color, hairstyle, nothing. Shape of the head, nothing resembles. They're all black, that's it. Otherwise they look absolutely nothing alike. Judge, I believe, I would disagree that they, there's no similarities between all of them. However... You can point out. I wouldn't even ask you for two. As I said, facial hair, dark hair. Three of the four are similar heights. In this case, as I said, the height from the witness is varied. So they kind of ran the gamut, judge. Okay, you're looking at a different photo than what I'm looking at right now. And I don't have the photo in front of me at the moment. Oh, you don't have it in front of you? Not at the moment, judge. You have a disadvantage then, that's fine. You're handicapped. I'm telling you what it looks like. I'm looking at it right now. And you can move on. Yes, judge, the differences in appearances would go to the weight of the identifications, not the admissibility of the identifications in this case. Furthermore, with regards to the prejudice prong, even if the defendant had been able to show that somehow the lineup was unduly suggestive, he never argues, even on appeal, the people would not have been able to show that the six identifications based on the live, so the identifications from the witnesses that participated in the live lineup were not based on their independent recollections and not based on any identification procedures utilized in this case. All six of the individuals that participated in the live lineup testified that they'd seen the defendant's face. They had ample opportunity to observe the defendant. And three of these witnesses, Francisco, Zoma, and Homero, all testified they saw the defendant on multiple occasions so they were familiar with this defendant. These identifications were strong not because of any identification procedures used, but because of the opportunity these witnesses had to view the defendant before, during, and after these attacks. Additionally, while six of these witnesses saw the live lineup, there was also the seventh witness, the victim XD, who saw a photo lineup on August 22nd, which has never been challenged. All seven individuals identified the same individual, this defendant. There was no hesitation on any of their parts and they all were able to identify him in court as well. So simply put, defendant cannot show that the decision to file or to not file a futile motion was objectively unreasonable and cannot show that any prejudice resulted from this decision. Finally, regarding the sentencing in this case, the sentence was well within discretion and the extended term range in this case, the court heard factors in aggravation and mitigation and crafted a sentence that is well within the statutory range and defendant has not shown that it was an abuse of discretion to do so. Well, what about the fact that under this sentence, if I'm not mistaken, he'll be near 80 years old, potentially before he's released. That doesn't sound like much rehabilitation effort if that's the situation. Yes, Judge, I believe he got really close to 80, not quite 80 when he's released. However, Judge, in this case, the defendant, as pointed out in aggravation, he repeatedly attacked women, not just in the two cases we have in front of us, but also in the 2006 juvenile case that the circuit court heard evidence of. The defendant admitted to attacking a woman in much the same way as in these two cases. Additionally, during the time he was in custody before sentencing, the defendant picked up a case for an assault of a correctional officer, as well as 11 public indecency and lewd exposure cases while in custody. This was an individual that the court found specifically was a danger to the public and needed to be protected from the public based on his ongoing actions that ran for years. It was also mental illness, correct? There was some indication at the time he was in custody, yes, that he had suffered some kind of mental illness, yes, Judge. And the court took note of that. It was presented with the records from the Cook County Department of Corrections. It noted that it had reviewed them and that is where the mental illness came up. So the court was well aware of that when it imposed its sentence. However, it's clear that the overriding concern of the circuit court was the danger to the public that the defendant posed in this case. If there are no further questions, we ask this court to affirm the defendant's convictions and sentence in this case. Thank you. Yes, briefly, your honors. Thank you. Just quickly on the sentencing, there's no question the state had aggravating evidence and there was evidence of prior incidents. I would just point to the court, as we said in the briefs, that in the context of this particular offense, again, this is a very serious offense and every defendant is convicted of these elements. But in the context of this particular offense, Mr. Hardy's conduct is not so severe as to warrant a natural life term. He'd never carried a weapon during any of these incidents and he never caused serious industry injury to anyone. So I would just point that out. And also on the new trial... Just so we're clear, this is actually an attempt case, correct? Yeah, both counts were attempted aggravated criminal sexual assault. So they were class ones, four to 15 years normally. The judge extended them and then ran them consecutive. And as Justice Hyman pointed out, this is essentially a de facto life term for Mr. Hardy. I don't think, especially given that his serious mental health problems that I don't need to tell you about, you read them, have been untreated. This is a person who needs rehabilitation and he's not beyond it. That's what the record shows. Briefly on the ineffectiveness claims, the state says that there's no guarantee that juries at separate trials would not convict him again of the same offenses. And that's true, but that's different from saying that there's no reasonable probability that the result would have been different had counsel done the things you should have done here, which is resever the cases and move to suppress the lineup IDs. We don't need to show that the in-court identifications would have been suppressed as well. That's an issue. We only show a reasonable probability that the lineup IDs would have been suppressed. And I think there is that reasonable probability because the lineup was so suggestive. The issue of whether the attenuation hearing would occur at a proper pre-trial motion on remand, and that's when that issue will be decided. Finally, on the question of overwhelming evidence, I think on the ineffectiveness claims, that definitely is where this case boils down to. And again, I just want to emphasize that the evidence in our two main cases in Lewis and Johnson was as strong or stronger than the state's evidence in this case. And both of those courts found sufficient prejudice because a misjoinder is such a prejudicial error as the Walston Court detailed in a thorough manner. So for all those reasons, Your Honor, we would ask that you remand for separate trials or in the alternative, reduce Mr. Hardy's sentence. Thank you. And I'm glad you recognize that's what this case turns on is whether or not the evidence was overwhelming. That is the question. And I would say the evidence in our two main cases was the state's evidence was very strong in those, but it shows, the remand in those cases show that a misjoinder is among the most prejudicial errors that can happen at a trial. Thank you, Your Honors. Thank you very much. I want to thank both of you. Excellent arguments. Again, we apologize for the technical difficulties, but you were both very well prepared and we appreciate that and the briefs were well done. So we're going to take the case under advisement again. Justice Pierce will listen to the argument. He wasn't able to rejoin us and we are recessed. Thank you very much.